UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JAMES BURGE,                                                   :
          Plaintiff,                          :
                                      :
          v.                                :          C.A. No. 15-279S
                                        :
CAROLYN W. COLVIN, ACTING                                      :
COMMISSIONER OF SOCIAL SECURITY,          :
          Defendant.                          :

## REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

For many years, Plaintiff James Burge has suffered from at-times debilitating headaches, eye pain and vision problems, and serious depression/anxiety, among other disorders; he claims that these impairments have caused him to be fully disabled since he was laid off from work in January 2009.  Nevertheless, he is able to drive, worked part-time during 2011 and 2012, and attended the Community College of Rhode Island ("CCRI"), taking three or four courses per semester, during 2013 and into 2014.  After the Commissioner of Social Security (the "Commissioner") adopted the decision of an Administrative Law Judge ("ALJ"), which denied his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under §§ 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3) (the "Act"), Plaintiff brought the matter to this Court.

Plaintiff's motion for reversal contends that the ALJ erred by relying on plainly-wrong state agency opinions that did not recognize the headaches, the depression/anxiety or the eye/vision issues as severe impairments at Step Two, and by affording limited or no weight to the only other opinion evidence from the consulting psychologist and Plaintiff's long-time treating therapist.  He also challenges the ALJ's adverse credibility determination regarding the

testimony of Plaintiff and his mother.  Because of these errors, Plaintiff argues that the ALJ's

residual functional capacity ("RFC")[1] finding is not supported by substantial evidence.

Defendant Carolyn W. Colvin ("Defendant") has filed a motion for an order affirming the

Commissioner's decision.

This matter has been referred to me for preliminary review, findings and recommended

disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  Having reviewed the entire record, I find

material legal error and that certain of the ALJ's findings are not sufficiently supported by

substantial evidence.  Accordingly, I recommend that Plaintiff's Motion for Reversal of the

Disability Determination of the Commissioner of Social Security (ECF No. 11) be GRANTED

and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 13)

be DENIED.

## I.      Background

### A.      Plaintiff's Background

Plaintiff was forty-one years old in 2009, on his alleged disability onset date, and forty-

seven years old on the date of the ALJ's decision.  Tr. 27.  He has at least a high school

education, and past work experience as a truck driver helper, forklift operator and CPU

technician.  Id.  While his pre-onset earnings were steady, roughly between $10,000 and

$20,000, the record also reflects that he did not appear to have sustained employment at a single

job, instead working at thirty different jobs.  Tr. 206-07.  Plaintiff's most recent source of income

appears to be derived from repairing and rebuilding computers, which also is the focus of the

courses he has been taking at CCRI.  Tr. 41-43.  While earlier in his life he lived independently,

since onset, he has lived with his mother and disabled brother and has only "one friend."  Tr. 40,

---

[1] Residual functional capacity is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting."  20 C.F.R. § 404.1545(a)(1).

61-63, 65.  He believes he was laid off from his part-time job repairing computers during the period of disability because the employer observed the effects of his headaches; he also believes that his failing grades in the most recent semester at CCRI are the result of an exacerbation of his symptoms.  Tr. 41-42, 44.  The mental and physical implications of two incidents from Plaintiff's childhood recur in the record – first, at the age of thirteen he experienced a serious head injury when he fell from a truck and was unconscious or amnesiac for five days and, second, during adolescence, he almost drowned and the boy who was with him died.  Tr. 69, 343, 325, 352.  There is also a suggestion of childhood sexual abuse.  Tr. 335, 342.

### B.        Medical and Opinion Evidence

Plaintiff's mental health challenges are longstanding and serious.  E.g., Tr. 342 (dropped out of high school due to depression, anxiety and inability to "get along with other kids"); Tr. 391 (2009 treatment note: "depression has never been this bad or lasted this long"); Tr. 323-25 (2011 treatment note: "Moderately severe depression . . . obsessive compulsive disorder . . . panic disorder . . . social anxiety . . . hyperactivity").  While these impairments have never resulted in either a hospitalization or intervention with a psychiatrist, treating providers have consistently noted serious depression, anxiety and occasional panic attacks, post-traumatic stress disorder ("PTSD") from the childhood near-death experience and attention issues serious enough to be diagnosed as Attention Deficit Hyperactivity Disorder ("ADHD").  Based on these impairments, providers have consistently prescribed an array of powerful drugs to treat mental health related symptoms, including Abilify, Amtrityline, Klonopin, Vyvanse, Stattera, Prozac, Adderall and Zoloft.  E.g., Tr. 265, 317, 323

Over much of the period of disability, Plaintiff has been in biweekly counseling, in addition to treating at Thundermist with a psychiatric nurse for prescription and monitoring of

mental health-related issues.  The record is replete with Plaintiff's complaints to treating

providers of memory deficits, difficulty completing tasks, and lost focus and concentration; it

also reflects providers' observations of flat affect, depressed mood, anxiety and declining

personal hygiene.  E.g., Tr. 298 (Nurse Jankowski: flat affect, depressed anxious mood,

complains of anhedonia, fatigue); Tr. 300 (Nurse Jankowski: "anxiety worr[y]ing about his

m[]others health for no apparent reason"); Tr. 503 (Nurse Shea: "Does not shower[] qd").  Many

of these deficits were objectively confirmed by the testing performed by SSA consulting

psychologist, Dr. Wendy Schwartz, who noted impairments in working memory and serious

deficits in processing speed.  Tr. 347.  Dr. Schwartz endorsed diagnoses of depressive and

anxiety disorder, as well as ADHD, and opined that Plaintiff's ability to respond to work

pressures and to deal with coworkers and supervisors "appears to be moderately-to-severely

impaired."  Tr. 348.  The licensed social worker, Ms. Brennan, who provided counseling for

more than two years, similarly opined that Plaintiff isolates himself from others, including his

family, and that his hygiene is poor; her objective observations include "often have to repeat

instructions," "difficult to engage," "gets agitated," "often irritable," "gets angry and

argumentative" and "gets easily frustrated."  Tr. 529-31.  She noted that his medications cause

"lethargy, poor memory, hyposomnia."  Tr. 528.  Her treating notes are entirely consistent with

her opinion.

Plaintiff's primary physical impairment is migraine headaches.  As with his mental health

challenges, his treating physicians have consistently viewed these complaints as serious enough

to justify prescriptions for such medications as Topamax, Imitrex and Fioricet.  The serious

nature of these headaches is clear from the treating record.  See, e.g., Tr. 300 ("H/A have been

bearable but freq. present and persistent"); Tr. 304 ("c/o vicious HA's on and off"); Tr. 305

(despite Topamax, "H/A that creeps up gradually can put him out of commission where he has to lie down occ for a few hrs at a time and can cause sensory sensitivities and nausea.  Reports feeling overwhelmed"); Tr. 308 (headaches better; only "has to lay down . . . every other day"); Tr. 328 (headaches worse despite treatment, "constant lasting all day, worse with increase in emotions (anger)").  The last treatment record for headaches is a December 2013 entry from Rhode Island Hospital, where Dr. Cabral noted that Topamax had been restarted but that headaches had not improved, that they were coming daily and were debilitating, and that Plaintiff was experiencing slow cognition, poor attention and increased depression.  Tr. 516-17.  Dr. Cabral proposed a streamlining of the medications and lifestyle adjustments.  Tr. 517.  Because the ALJ hearing was held less than two weeks later, there is no indication as to whether these recommendations were efficacious.

Notably, Dr. Schwartz's consulting examination report regarding Plaintiff's mental health impairments highlights the apparent (to her) seriousness of Plaintiff's physical complaints: "Overall, this patient's functional limitations appear to be due to physical issues [headaches, eye pain], which would have to be further evaluated by medical professional as well as emotional issues and some concentration issues." Tr. 347-48.  Similarly, in her treating notes, Ms. Brennan, who was treating Plaintiff, *inter alia*, for the mental health effects of his physical symptoms, noted "daily chronic headaches which he describes as debilitating and interfere with his daily functioning."  Tr. 454.

Finally, the record includes references to Plaintiff's somewhat mysterious complaints about eye pain and vision issues sprinkled throughout.  The SSA officer who took his disability application specifically noted that Plaintiff seemed to have trouble seeing the signature block. Tr. 241.  Plaintiff's function report includes references to "blurred vision" and to his need to use

a magnifying glass to read or use a computer. Tr. 253, 266, 269. Plaintiff's mother, who was sequestered during her son's testimony, confirmed that she has observed him using a magnifying glass over the past two years. Tr. 71. The treating record includes repeated complaints about his eyes. E.g., Tr. 312 (tells counselor about eye pain); Tr. 370 (tells psychiatric nurse about chronic eye pain but eye doctor could find nothing). While the Koch Eye medical record borders on unreadable and reflects that Plaintiff's basic vision is no worse than 20/40, it also notes "occ****[2] diplopia" and blurry vision, but does not assess whether potential functional limitations might be related to these conditions. Tr. 435-38. Relatedly, Dr. Greenblatt of CCAP notes a vision-related diagnosis of "strabismic amblyopia of both eyes." Tr. 441.

One other important consideration that appears throughout the record is Plaintiff's apparent weakness in communicating effectively about his symptoms and his inability to get treatment because of the lack of insurance. First, in virtually every mental status assessment, his "flat affect" is noted. Ms. Brennan mentions his frustration "because he is receiving medical care through a clinic and is unable to access proper [treatment] and testing." Tr. 451. In her opinion, she confirms that she referred him for evaluation but he "could not afford . . . no medical coverage." Tr. 531. Regarding his ability to communicate about his symptoms, Ms. Brennan noted that he is "difficult to engage . . . does not communicate well with others." Tr. 530; see Tr. 448 ("very guarded"). The SSA officer who interviewed him when he applied for disability noted, "very low affect and slow response to questions. Poor memory for dates and events in time. Had difficulty recalling meds." Tr. 241; see Tr. 318 (Dr. Rodriguez, "somewhat vague" about headache symptoms).

Faced with this record, somehow the four SSA reviewing experts, two psychologists and two physicians, reviewed the file and, at Step Two, where the bar is set deliberately low, found

---

[2] This reference is partially unreadable.

that only ADD is a severe impairment.  Tr. 58, 95, 105-06, 116-17.  Unsurprisingly, the ALJ

rejected these opinions and found that Plaintiff's Step-Two severe impairments include not just

ADD, but also depression, anxiety and headache disorder.  Tr. 20.  Because the SSA examiners

rejected all of Plaintiff's other complaints and diagnoses, the only analysis of the impact of pain

(headaches and eye pain), depression and anxiety, and the side effects of the medications

prescribed to treat them on Plaintiff's ability to function is that contained in Dr. Schwartz's

consulting report and Ms. Brennan's detailed function-by-function opinion.  However, the ALJ

also rejected both of these opinions as inconsistent with the mental status examinations in the

treating record; as to Ms. Brennan, the ALJ also relied on his conclusion that her failure to

mention Plaintiff's part-time work and CCRI classes meant that she was not aware of them.  Tr.

26.  Then, despite his own rejection of the SSA opinions at Step Two, the ALJ nevertheless gave

the opinions of the four examiners "substantial evidentiary weight;" he used them, coupled with

his own lay assessment of this complicated record, to formulate the RFC holding that Plaintiff

can perform work at all exertional levels, limited only to simple tasks with occasional interaction

with coworkers, supervisors and the public.  Tr. 22.

## II.      Travel of the Case

Plaintiff filed his applications for DIB and SSI on October 16, 2012, alleging disability as

of January 6, 2009.  Tr. 18, 188-205.  His applications were denied initially, Tr. 81-100, and on

reconsideration, Tr. 101-22, and Plaintiff requested a hearing before an ALJ, Tr. 142-44.  On

January 8, 2014, the ALJ held a hearing at which Plaintiff, who was represented by counsel, and

a vocational expert ("VE") appeared and testified.  Tr. 34-79.  On February 25, 2014, the ALJ

issued a decision finding that Plaintiff was not disabled, and was therefore not entitled to receive

the requested benefits.  Tr. 18-29.  The Appeals Council denied Plaintiff's request for review of

this decision, Tr. 1-6, rendering the ALJ's decision the final decision of the Commissioner. Plaintiff has exhausted his administrative remedies, and this case is now ripe for judicial review under 42 U.S.C. § 405(g).

### III.     Issues Presented

Plaintiff's motion for reversal rests on four arguments: that 1) the ALJ erred in his handling of Plaintiff's physical impairments at Step Two and Step Three of the sequential evaluation; 2) the ALJ did not weigh the medical opinion evidence in compliance with the statute, regulations, or rulings; 3) the ALJ's determination as to the credibility of Plaintiff and his mother is not supported by substantial evidence; and 4) substantial evidence does not support the ALJ's RFC finding.

### IV.     Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999).  Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).

The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).  Thus, the Court's role in reviewing the Commissioner's decision is limited.  Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)).  A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence.  See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 404.1529(a).

The Court must reverse the ALJ's decision if the ALJ applied incorrect law or failed to provide the Court with sufficient reasoning to determine that the law was applied properly. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991).  Remand is unnecessary when the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) (citing Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985)).  The Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g); under Sentence Six of 42 U.S.C. § 405(g); or under both sentences. Jackson v. Chater, 99 F.3d 1086, 1097-98 (11th Cir. 1996).  To remand under Sentence Four, the Court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Seavey, 276 F.3d at 9; accord

Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

## V.        Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 416(I); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A.        Treating Physicians and Other Sources

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there are good reasons to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(c).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  Konuch v. Astrue, No. 11-193L, 2012 WL 5032667, at *4-5 (D.R.I. Sept. 13, 2012); 20 C.F.R. § 404.1527(c)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988).  The ALJ's decision must articulate the weight given, providing "good reasons" for the determination.  See Sargent v. Astrue, No. CA 11–220 ML, 2012 WL 5413132, at *7-8, 11-12 (D.R.I. Sept. 20, 2012) (where

ALJ failed to point to evidence to support weight accorded treating source opinion, court will not

speculate and try to glean from the record; remand so that ALJ can explicitly set forth findings).

A treating source who is not a licensed physician or psychologist[3] is not an "acceptable

medical source."  20 C.F.R. § 404.1513; SSR 06-03p, 2006 WL 2263437, at *2 (Aug. 9, 2006).

Only an acceptable medical source may provide a medical opinion entitled to controlling weight

to establish the existence of a medically determinable impairment.  SSR 06-03p, 2006 WL

2263437, at *2.  An "other source," such as a nurse practitioner or licensed clinical social

worker, is not an "acceptable medical source," and cannot establish the existence of a medically

determinable impairment, though such a source may provide insight into the severity of an

impairment, including its impact on the individual's ability to function.  Id. at *2-3.  In general,

an opinion from an "other source" is not entitled to the same deference as an opinion from a

treating physician or psychologist.  Id. at *5.  Nevertheless, the opinions of medical sources who

are not "acceptable medical sources" are important and should be evaluated on key issues such

as severity and functional effects, along with other relevant evidence in the file.  Id. at *4.

The ALJ is required to review all of the medical findings and other evidence that support

a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for

making the ultimate determination about whether a claimant meets the statutory definition of

disability.  20 C.F.R. § 404.1527(d).  The ALJ is not required to give any special significance to

the status of a physician as treating or non-treating in weighing an opinion on whether the

claimant meets a listed impairment, a claimant's residual functional capacity ("RFC"), see 20

C.F.R. § 404.1545-1546, or the application of vocational factors because that ultimate

---

[3] The regulations recognize other categories of providers as acceptable medical sources for certain impairments; for example, a licensed optometrist is acceptable for measurement of visual acuity and visual fields.  SSR 06-03p, 2006 WL 2263437, at *1.

11

determination is the province of the Commissioner. 20 C.F.R. § 404.1527(d); see also Dudley v.

Sec'y of Health & Human Servs., 816 F.2d 792, 794 (1st Cir. 1987) (per curiam).

**B.      The Five-Step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§

404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, the claimant is

not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, if a claimant does not have any

impairment or combination of impairments that significantly limit physical or mental ability to

do basic work activities, then the claimant does not have a severe impairment and is not disabled.

20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if a claimant's impairments meet or equal an

impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. 20 C.F.R. §§

404.1520(d), 416.920(d). Fourth, if a claimant's impairments do not prevent doing past relevant

work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f); 416.920(e)-(f). Fifth, if a

claimant's impairments (considering RFC, age, education and past work) prevent doing other

work that exists in the local or national economy, a finding of disabled is warranted. 20 C.F.R.

§§ 404.1520(g), 416.920(g). Significantly, the claimant bears the burden of proof at Steps One

through Four, but the Commissioner bears the burden at Step Five. Wells v. Barnhart, 267 F.

Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to both DIB and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently

severe, the ALJ must consider the combined effect of all of the claimant's impairments and must

consider any medically severe combination of impairments throughout the disability

determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and

well-articulated findings as to the effect of a combination of impairments when determining

whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

### C.    Making Credibility Determinations

Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate

specific and adequate reasons for doing so, or the record must be obvious as to the credibility

finding.  See Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986);

Rohrberg, 26 F. Supp. 2d at 309-10.  A reviewing court will not disturb a clearly articulated

credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at

195.  The lack of a sufficiently explicit credibility finding becomes a ground for remand when

credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349,

1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility

determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such

testimony or the implication must be so clear as to amount to a specific credibility finding."

Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d

1251, 1255 (11th Cir. 1983)).

### D.    Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36.

Congress has determined that a claimant will not be considered disabled unless medical and

other evidence (e .g., medical signs and laboratory findings) is furnished showing the existence

of a medical impairment which could reasonably be expected to produce the pain or symptoms

alleged. 42 U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about

symptoms, including pain, and determine the extent to which the symptoms can reasonably be

accepted as consistent with the objective medical evidence.  20 C.F.R. §§ 404.1529; 416.929.  In

determining whether the medical signs and laboratory findings show medical impairments which

13

reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's

six-part pain analysis and consider the following factors:

1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
3. Type, dosage, effectiveness, and adverse side-effects of any pain medication;
4. Treatment, other than medication, for relief of pain;
5. Functional restrictions; and
6. The claimant's daily activities.

Avery, 797 F.2d at 29; Gullon v. Astrue, No. 11-cv-099ML, 2011 WL 6748498, at *5-6 (D.R.I.

Nov. 30, 2011).  An individual's statement as to pain is not, by itself, conclusive of disability.  42

U.S.C. § 423(d)(5)(A).

The Commissioner's guidance to adjudicators regarding the assessment of the impact of

pain on functional capacity has recently been updated from the longstanding 1996 ruling.  SSR

16-3p, 2016 WL 1119029 (Mar. 16, 2016), updating SSR 96-7p, 1996 WL 374186 (July 2,

1996).  Whether under the old or the new standard,[4] it remains clear that adjudicators must

"consider all of the evidence in an individual's record when they evaluate the intensity and

persistence of symptoms after they find that the individual has a medically determinable

impairment(s) that could reasonably be expected to produce those symptoms."  2016 WL

1119029, at *2; see 1996 WL 374186 at *4; see also Crow v. Colvin, No. CA 13-225PAS, 2014

WL 3966362, at *10 (D.R.I. Aug. 13, 2014).

## VI.    Analysis

Plaintiff presents with a complex set of serious mental health issues, exacerbated by

headache and eye pain and the side effects of pain medication, mixed into a record that includes

a part-time job, followed by CCRI classes, and an absence of the pattern of hospitalizations that

---

[4] The ALJ in this case issued his decision in 2014; therefore, if he evaluated the impact of pain on Plaintiff's RFC, he would have been correct to rely on SSR 96-7p.

appears in the records of the most serious mental health-impaired persons.  Perhaps distracted by the job, CCRI classes and lack of hospitalizations, all four of the reviewing SSA experts missed the boat.  The ALJ's rejection of their Step Two conclusions confirms what is also obvious to the Court: their collective conclusion that only ADD meets the Step Two bar is simply wrong.

A brief review of the applicable law confirms this finding.  An impairment is "not severe" at Step Two only when the medical evidence establishes no more than a slight abnormality that would have no more than a minimal effect on an individual's ability to work.  SSR 85-28 at *2.  As the First Circuit has long held, Step Two is a screening device to eliminate applicants whose impairments are so minimal that, as a matter of common sense, they are clearly not disabled from gainful employment.  McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1123 (1st Cir. 1986); Campos v. Colvin, No. CA 13-216 ML, 2014 WL 2453358, at *11-12 (D.R.I. June 2, 2014).  When Plaintiff's medical record is read with this standard in mind, it is clear that the SSA examining physicians and psychologists either did not actually review it, or profoundly misread it.  As the ALJ himself found, Plaintiff's depression, anxiety and headaches, with related pain and side effects from medications, all plainly meet the Step Two standard for severity.  Moreover, it is equally difficult to understand how the record references to Plaintiff's eye pain and vision difficulties do not also rise to the level of "more than a minimal effect on an individual's ability to work."  SSR 85-28 at *3.  Plaintiff's testimony about blurry vision, eye pain, and the need to use a magnifying glass to read or use a computer (which is corroborated by the testimony of his mother) alone would seem sufficient, particularly where that testimony is coupled with undeveloped record references to "occ****[5] diplopia" and "strabismic amblyopia of both eyes."  The ALJ's Step Two analysis simply makes no reference to vision or eye pain.  That oversight is clearly error.

---

[5] This reference is partially unreadable.

The question for the Court is whether any of this matters. Despite the lack of supporting opinions from the SSA examiners, the ALJ found that not just ADD, but also headaches, depression and anxiety are severe; therefore, the sequential analysis proceeded past Step Two. Moreover, the ALJ included a brief discussion of his lay analysis of the functional impact of Plaintiff's vision and eye issues in his RFC analysis. See Syms v. Astrue, No. 10-cv-499-JD, 2011 WL 4017870, at *1-2 (D.N.H. Sept. 8, 2011) (courts consistently label Step Two omissions as harmless as long as analysis continues). Does that solve the problem?

I find that it does not.

Having sidestepped the failure of the SSA examiners to properly assess Plaintiff's impairments at Step Two, the ALJ rehabilitates them for the balance of the analysis, leading inexorably (since they did not consider most of Plaintiff's impairments severe) to an RFC that would permit work. The ALJ found that they should be afforded "substantial evidentiary weight as they are supported by the evidence of record," with no explanation for how this finding harmonizes with his rejection of them at Step Two. Tr. 26. More troubling, he specifically relied on them to formulate the RFC – "the above residual functional capacity assessment is supported by . . . the assessments of the non-examining physician reviewers at the initial and reconsideration levels." Tr. 27. Thus, while non-reliance on these flawed opinions at Step Two potentially avoided error, the ALJ's uncritical reliance on them for the balance of sequential analysis is error requiring remand unless the other evidence of record is sufficiently substantial to support the RFC.

Before turning to the other evidence on which the ALJ did rely, it is important to pause to examine the evidence that the ALJ set aside, the consulting examination report of Dr. Schwartz and the opinion of the long-time treating therapist, Ms. Brennan. The ALJ's principle reason for

rejecting them – they are supposedly inconsistent with the treating records and mental status examinations – does not stand up to scrutiny. For starters, the ALJ cannot buttress the finding of inconsistency by reliance on the SSA reviewing psychologists whose file review yielded such profoundly flawed opinions. Nor can the ALJ's own interpretation of the mental health record support his conclusion. Rather, to this lay adjudicator, who is no more qualified than the ALJ to interpret the treating medical records of providers at Thundermist, Rhode Island Hospital, CCAP and Well One, the description of Plaintiff's mental health impairments in those records appears to be consistent with the Schwartz/Brennan opinions. The ALJ's finding of inconsistency seems to be based on an improper lay cherry-pick of the many references to small improvements in Plaintiff's symptoms, at the same time that, over months and years, the intensity of the headaches, the effect of the pain they cause, the depth of the depression, the troubling tendency to self-isolate, the difficulties with cognition and memory, the effects of anxiety, the occasional panic attacks, the fatigue, the sleeplessness and the frustration and irritability appear to persist without significant change. Nguyen, 172 F.3d at 35 ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination.").

The ALJ's additional reasons for rejecting the Brennan opinion are equally insufficient. While the ALJ is right that Ms. Brennan's notes never mention Plaintiff's part-time work or CCRI classes, that seems as likely to be the result of her note-taking protocol than of her lack of awareness of those activities. With almost fifty appointments over little more than two years, it is difficult to contemplate that she would not have known of Plaintiff's activities. The ALJ is also right that Ms. Brennan is not a medically acceptable source; however, it is equally clear that such opinions are important and should be evaluated on key issues such as severity and

17

functional effects, along with other relevant evidence in the file. SSR 06-03p, 2006 WL

2263437, at *4. At bottom, Ms. Brennan's long and deep treating relationship resulted in an

opinion that is detailed and function-focused; it merited more weight than the ALJ gave it.

What remains is the raw record and the ALJ's lay interpretation of it. After sifting out

symptoms that the ALJ ignored, presumably based on his adverse credibility findings (such as

the need to use a magnifying glass to read and the need to lie down every other day after the

headaches improved), the ALJ's RFC is based on his lay analysis of the effects of the symptoms

and impairments he accepted. It is well settled that an ALJ cannot base the RFC determination

on his own independent interpretation of raw medical data beyond the ken of a lay person.

Morey v. Colvin, C.A. No. 14-433M, 2015 WL 9855873, at *1, 13 (D.R.I. Oct. 5, 2015),

adopted, C.A. No. 14-433-M-PSA, 2016 WL 224104 (D.R.I. Jan. 19, 2016). Further, this

remand-worthy error is exacerbated in this instance by the ALJ's failure to consider some of the

Avery pain factors, particularly the side effects of the medications Plaintiff was prescribed to

treat the pain. Nguyen, 172 F.3d at 35 (ALJ cannot rely on uneducated guess as to meaning and

validity of raw record data); see Renaud v. Colvin, 111 F. Supp. 3d 155, 160 n.8 (D.R.I. 2015)

(impermissible for ALJ to find complaints inconsistent with "good recall, memory, concentration

and thought" without expert evidence); Forbes v. Colvin, No. CA 14-249-M-PAS, 2015 WL

1571153, at *11 (D.R.I. Apr. 8, 2015) (ALJ lacked expert opinion to support relationship

between raw evidence and claimant's ability to stand or walk).

With remand required, I linger briefly to comment on the ALJ's credibility findings. For

Plaintiff himself, the ALJ listed an array of reasons, some of which are colorable, while others

are not. For example, Plaintiff's claim of being totally bed-bound does not jive with part-time

work or attendance at CCRI classes. Tr. 27. Other reasons do not hold up as well. The

collection of unemployment benefits, without more, is routinely rejected as supportive as an adverse credibility finding. Howcroft v. Colvin, C.A. No. 15-201S, 2016 WL 3063858, at *14 (D.R.I. Apr. 29, 2016) (acceptance of unemployment, standing alone, not enough to support an adverse credibility inference), adopted, C.A. No. 15-201 S, 2016 WL 3072254 (D.R.I. May 31, 2016). Similarly, the ALJ's finding of medication noncompliance seems to rest largely on record references suggesting that treating providers changed their medication recommendations in the seemingly discouraging search for a medication balance that would adequately manage Plaintiff's symptoms. E.g., Tr. 294 (over-the-counter pain medication included on current medication list in 2012); Tr. 332 (2011 use of over-the-counter medication reported to Dr. Rodriguez; no recommendation not to take them); Tr. 507 (in 2013, Dr. Rodriguez recommends that over-the-counter medication be stopped).

Even more troubling are the objective facts – such as the need to use a magnifying glass – that, if true, would have a profound impact on work-based functionality. With a finding only that Plaintiff "is not entirely credible" and that his mother is "not a disinterested/impartial source," Tr. 23, 27, the ALJ's apparent rejection of this symptom without any analysis of whether he found it to be untrue tips the balance. These errors are too pervasive to allow the adverse credibility determination to stand. Howcroft, 2016 WL 3063858, at *14 (when adverse credibility finding is based on mix of well-founded reasons and reason not based on substantial evidence, court must decide whether errors so tainted it as to require remand); Beaudet v. Colvin, No. CA 14-112 S, 2015 WL 5510915, at *16-17 (D.R.I. Sept. 16, 2015) (when ALJ's credibility finding is neither "terse nor sparse," it properly rests on other substantial evidence, even after exclusion of erroneous grounds). The lack of substantial evidence to support it requires a do-over of the credibility findings.

19

Based on the foregoing, I find that the ALJ's treatment of Plaintiff's eye and vision issues at Step Two, the weight given to the opinions of the consulting psychologist and the treating therapist, the formulation of an RFC in reliance only on flawed SSA examining opinions, and the adverse credibility findings are sufficiently tainted by error to require remand.  Whether this will require a medical expert should be left to the Commissioner's discretion.  See Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 16-17 (1st Cir. 1996); SSR 96-6p, SSR 96-7p; 20 C.F.R. §§ 404.1527(e), 416.927(e).

## VII.   Conclusion

I recommend that Plaintiff's Motion for Reversal of the Disability Determination of the Commissioner of Social Security (ECF No. 11) be GRANTED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 13) be DENIED.  Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
December 7, 2016